**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| MICHAEL MANSFIELD, an individual,<br>    Plaintiff,<br><br>v.<br><br>PENNSYLVANIA TRANSFORMER<br>TECHNOLOGY, INC. HEALTH &<br>WELFARE PLAN; and AETNA LIFE<br>INSURANCE COMPANY,<br>    Defendants. | CIVIL ACTION<br><br><br>No. _____ |

## **COMPLAINT IN CIVIL ACTION**

AND NOW, comes the Plaintiff, Michael Mansfield, by and through his attorneys, Caroselli Beachler & Coleman, LLC and Susan A. Meredith, Esquire, and files the following Complaint in Civil Action and, in support thereof, avers as follows:

## **PARTIES**

1.  Plaintiff Michael Mansfield, an individual, citizen and resident of the Commonwealth of Pennsylvania, resides at 125 Ricci Street, Southwest, Westmoreland County, Pennsylvania 15685.

2.  Defendant Pennsylvania Transformer Technology, Inc. Health & Welfare Plan ("Plan") is a plan established and/or maintained by Pennsylvania Transformer Technology, Inc. to provide health and welfare benefits to participants, including, but not limited to, Michael Mansfield. The Plan's address is 30 Curry Avenue, Canonsburg, Washington County, Pennsylvania 15317.

3.  Defendant Aetna Life Insurance Company ("Aetna") is a corporation and an insurance company duly organized and existing under the laws in a state other than Pennsylvania,

1

with a principle place of business located at 151 Farmington Avenue, Hartford, Connecticut 06156.  At all times relevant, Aetna was the claims administrator for the plan at issue in this case.

## JURISDICTION AND VENUE

4. This is an action for equitable relief brought under the Employer Retirement Income Security Act, 29 U.S.C. §101 *et seq*.

5. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331 and 29 U.S.C. §1132.

6. Venue is proper in this district because this is where the breach took place.

## FACTS

7. At all relevant times, Plaintiff was an employee of Pennsylvania Transformer Technology, Inc. and was employed as a winder with Pennsylvania Transformer Technology, Inc.

8. The job of winder involved responsibility for construction of coil through the use of winding specifications and engineering drawing; making brazed connections; fabricating cross-overs; installing cooling ducts and burned leads with an induction heater or oxygen/acetylene torch; set up, wind and dismantle coil set-ups; removal, up-end and proper storage of coils upon completion; and recording cylinders, wire, and coil checksheets, as required.  The job as performed required the use of ladders, scaffolding, cranes, forklifts, torches, induction blazers, hydraulic equipment, measuring devices, bandsaws, sanders, planers, coil up-enders, and various hand tools, both powered and manual.  The physical demands of the job required occasional lifting and moving up to 60

pounds. The job required the ability to climb ladders, balance, stoop, kneel, crouch and crawl.

9. Plaintiff's illness began in January of 2016, when he developed a sore throat and began to experience headaches. Over the next several months he lost 15 pounds.

10. Plaintiff's symptoms progressed, and on March 31, 2016 he was seen at Canonsburg General Hospital Emergency Room with symptoms of weight loss, insomnia, congestion and light-headedness. He was discharged with instructions to follow up with his primary care physician, Dr. Gross.

11. Plaintiff saw Dr. Gross who took him off of work.

12. Dr. Gross referred Plaintiff to Dr. Carlos Marrero, a neurologist.

13. Plaintiff saw Dr. Marrero on April 6, 2016, at which time he was experiencing sudden, unexplained weakness, disorientation, headaches, forgetfulness and difficulties with his short-term memory. The doctor specifically noted that the Plaintiff was having difficulty expressing his thoughts, and on ambulation he had slight difficulty walking tandem and increased swaying on the Romberg test. The clinical diagnosis was minimal cognitive insufficiency, confusion and headaches – mixed type. He was referred for a brain MRI, bloodwork and scheduled for an EEG.

14. On April 13, 2016, he had an EEG which was abnormal.

15. Mr. Mansfield's symptoms did not improve, and he was again seen at the emergency room on April 15, 2016 with a chief complaint of hypertension. His blood pressure on arrival was 167/117. He was discharged with a diagnosis of elevated blood pressure reading.

16. Plaintiff returned to see Dr. Marrero on May 5, 2016, at which point he was continuing to have confusion, impairment of reaction time and having difficulty concentrating and

performing activities. Dr. Marrero noted that the MRI of the brain revealed diffuse white matter, ischemic changes, and the EEG was abnormal, suggesting decreased seizure threshold. He also had vestibular dysfunction on the VNG (videonyphography). Dr. Marrero's diagnosis was minimal cognitive insufficiency and simple, partial seizures.

17. Plaintiff was again seen in the emergency room on May 13, 2016 with chief complaints of a headache. He was discharged with a diagnosis of headache, anxiety disorder and insufficient sleep syndrome and given instructions on temporal arteritis.

18. On May 16, 2016, Dr. Marrero completed an Attending Physician Statement that noted that the primary diagnosis was minimal cognitive insufficiency and headaches. He indicated that the Plaintiff had symptoms that included "forgetful with loss of short-term memory", "difficulty expressing his thoughts", "lack of concentration", and "headaches with malaise". He specifically stated that the Plaintiff's symptoms had impaired his ability to work from April 6, 2016. Although he was unsure when the Plaintiff would make a full recovery, he stated that he expected to see improvements within one month of medical treatment.

19. On May 21, 2016, the Plaintiff was again seen at the emergency room with another significant headache.

20. The Plaintiff returned to see Dr. Marrero on May 26, 2016, at which point Dr. Marrero reviewed the test results performed and indicated that although the ambulatory EEG had been unremarkable, the brain MRI revealed thrombotic strokes. His diagnosis was mixed-type headaches and thrombotic cerebral vascular accident. He was given Fioricet for headaches and was to continue on Aricept at night.

21. The Plaintiff next saw Dr. Marrero on July 1, 2016, at which point he was reporting that he was feeling better and interested in returning to work. Dr. Marrero's diagnosis was minimal cognitive insufficiency and headaches – mixed type. The doctor recommended a functional capacity evaluation.

22. On July 13, 2016, a functional capacity evaluation was performed, which showed that the Plaintiff was capable of doing medium-to-heavy work on an occasional basis.

23. The Plaintiff returned to work on August 1, 2016.

24. The Plaintiff presented a claim for benefits under the Plan and was initially denied on June 2, 2016. A true and correct copy of Aetna's denial is attached hereto as Exhibit "A". The letter, which speaks for itself, denies Plaintiff's claim on the basis that he did not meet the "test of disability" under the Plan.

25. The Plaintiff appealed the June 2, 2016 denial and, as a result of that appeal, on August 31, 2016, Defendants again denied the claim. A true and correct copy of the Defendants' August 31, 2016 letter is attached hereto as Exhibit "B".

26. Upon information and belief, Pennsylvania Transformer Technology, Inc. maintained a group disability income policy which provided short-term disability benefits to employees if they met the "test of disability" within the policy. A true and correct copy of the group disability policy ("Policy") is attached hereto as Exhibit "C".

27. The policy defines the "test of disability" as:

> You meet the **test of disability** if you are not able perform the **material duties** of your **own occupation** because of an **illness** or **injury**, or because of a pregnancy-related condition. You are not performing the **material duties** of your **own occupation** if:
>
> - You are only performing some of the **material duties** of your **own occupation**; and

- Your income is 80% or less of your **predisability earnings** solely because of an **illness, injury** or a disabling pregnancy-related condition.

(Exhibit C, policy, p. 7).

28. The policy further defines the term "material duties" to mean:

    Duties that:

    - Are normally needed for the performance of your **own occupation**; and
    - Cannot be reasonably left out or changed. However, to be at work more than 40 hours per week is not a material duty.

    (Exhibit C, policy, p. 21).

29. The policy defines "own occupation" to mean:

    The occupation that you are routinely performing when your period of disability begins. Your occupation will be viewed as it is normally performed in the national economy instead of how it is performed:

    - For your specific employer; or
    - At your location or work site; and
    - Without regard to your specific reporting relationship.

    (Exhibit C, policy, p. 21).

30. The policy defines "illness" as "a pathological condition of the body that presents a group of clinical signs and symptoms and laboratory findings particular to the findings set the condition apart as an abnormal entity differing from other normal or pathological body states". (Exhibit C, policy, p. 20).

31. The policy defines "injury" as:

    An accidental bodily **injury** that is the sole and direct result of:

    - An unexpected or reasonably unforeseeable occurrence or event; or

- The reasonable, unforeseeable consequence of a voluntary act by the person.

    The act or event must be definite as to time and place. An **injury** is not the direct result of **illness**.

(Exhibit C, policy, p. 20).

32. The Plan is a fiduciary within the meaning of 29 U.S.C. §§1002(21) and 1102 in that it exercised discretionary authority or discretionary control respecting management of the Plan and/or exercise authority or control respecting management or disposition of the assets and/or had discretionary authority or discretionary responsibility in the administration of the Plan.

33. Aetna is a fiduciary within the meaning of 29 U.S.C. §§1002(21) and 1102 in that it exercised discretionary authority or discretionary control respecting management of the Plan and/or exercise authority or control respecting management or disposition of its assets and/or had discretionary authority or discretionary responsibility in the administration of the Plan.

34. Defendants, the Plan and/or Aetna engaged in fiduciary acts connected to the administration of the group disability policy in making their determination about whether the Plaintiff was entitled to benefits under the terms of the Plan.

35. Defendants, the Plan and/or Aetna breached their fiduciary duties set forth in ERISA §404, 29 U.S.C. §1104 by failing to act for the exclusive benefit of the Plaintiff.

36. The Plaintiff exhausted all administrative levels of appeal, and any further attempts to exhaust administrative remedies would be futile.

37. Defendants, the Plan and/or Aetna operate under a structured conflict of interest in that they and/or it both funded and administered benefits under the Plan.

## COUNT I

### Denial of Benefits.

38. The foregoing Paragraphs are incorporated herein by reference.

39. Pursuant to ERISA §502(a)(1)(b), 29 U.S.C. §1132(a)(1)(b), the Plaintiff is entitled to bring this action to recover benefits due him under the terms of the Plan and to enforce his rights under the terms of the Plan.

40. The Plaintiff submitted medical information confirming his disability and his inability to perform the substantial material duties of his occupation due to the continuing health and medical problems from April 1, 2016 through his return to work on August 1, 2016.

41. The Defendants improperly denied the Plaintiff his benefits in the following manner:

    a) It/they failed to acknowledge the findings of the treating physicians who indicated Plaintiff was unable to work;

    b) It/they failed to take into account the medical records of Plaintiff's treating physicians;

    c) It/they had their reviewing physician contact Plaintiff's doctors after he returned to work, thus providing inaccurate information on his work capability since he was already back to work;

    d) It/they failed to acknowledge that due to the nature of the Plaintiff's job, and specifically the physical requirements and use of heavy equipment, he could not work and/or it was not safe for him to work when he was experiencing symptoms that included dizziness, confusion, headaches and short-term memory issues;

    e) It/they advised Plaintiff in their June 2, 2016 denial letter that they reviewed an attending physicians statement of Dr. Gross but have failed to produced such statement either when the claim file was request or when Plaintiff's counsel specifically requested the statement in a letter dated January 23, 2017;

    f) It/they evaluated the medical evidence in a biased matter; and

8

g) The Defendants denied the Plaintiff's claim in violation of the Plan documents.

WHEREFORE, pursuant to 29 U.S.C. §1132(A)(1)(b), the Plaintiff requests equitable and legal relief to:

a) Declare that the Plaintiff is entitled to short-term disability benefits for the period between April 1, 2016 and July 31, 2016;

b) Place the Plaintiff in a position he would have been in had he been paid the full amount of his benefits to which he was entitled, including without limitation, interest, attorney fees and other losses resulting from Defendants' breach;

c) Order that the Defendants pay costs of suit, attorney fees and costs pursuant to 29 U.S.C. §1132(g); and

d) Award all such other and further relief as the Court deems just and proper.

## COUNT II

### Breach of Fiduciary Duty.

42. The foregoing Paragraphs are incorporated herein by reference.

43. Defendants the Plan and/or Aetna were fiduciaries within the meaning of 29 U.S.C. §§1002(21) and 1102.

44. As fiduciaries, they were required to discharge their duties "solely in the interest of the participants and beneficiaries for the exclusive purpose of providing benefits to participants and their beneficiaries; and . . . in accordance with the documents and instruments governing the Plan . . . ." (ERISA §404(a), 29 U.S.C.§1104(a)).

45. Defendants breached this fiduciary duty when they failed to act for the exclusive purpose of providing benefits to the Plaintiff, a participant, and failed to act in accordance with the documents and instruments governing the Plan.

9

WHEREFORE, pursuant to 29 U.S.C. §1132(a)(2) and (3) and (c)(1), the Plaintiff requests equitable and legal relief to:

a) Declare that the Plaintiff is entitled to short-term disability benefits for the period between April 1, 2016 and July 31, 2016;

b) Place the Plaintiff in a position he would have been in had he been paid the full amount of his benefits to which he was entitled, including without limitation, interest, attorney fees and other losses resulting from Defendants' breach;

c) Order that the Defendants pay costs of suit, attorney fees and costs pursuant to 29 U.S.C. §1132(g); and

d) Award all such other and further relief as the Court deems just and proper.

**JURY TRIAL DEMANDED**

Respectfully submitted,

Dated: April  24 , 2017                BY:   / s /  Susan A. Meredith
                                       Susan A. Meredith, Esquire
                                       E-Mail:  smeredith@cbmclaw.com
                                       Pa. ID No. 76767

                                       **CAROSELLI BEACHLER & COLEMAN, LLC**

                                       20 Stanwix Street, 7th Floor
                                       Pittsburgh, Pennsylvania  15222-4802

                                       (412) 391-9860 Telephone
                                       (412) 391-7453 Facsimile
                                       *Counsel for Plaintiff*